UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EVELYN CAROLYN HENDERSON, | Case No. C14-1736RSM |
| Plaintiff, | |
| v. | ORDER ON SOCIAL SECURITY DISABILITY |
| CAROLYN COLVIN, | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

## I.      INTRODUCTION

Plaintiff, Evelyn C. Henderson, brings this action pursuant to 42 U.S.C. §§ 405(g), and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income disability benefits, under Title II and Title XVI of the Social Security Act. This matter has been fully briefed and, after reviewing the record in its entirety, the Court AFFIRMS the Commissioner's decision.

## II.      BACKGROUND

On June 28, 2011, Plaintiff filed an application for Supplemental Security Income disability benefits (SSI), alleging disability commencing on February 1, 2009. Tr. 22. Her application was denied initially and upon reconsideration. *Id*. A hearing was held before Administrative Law Judge ("ALJ") Verrell Dethloff on May 15, 2013. Tr. 22. She was

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 1

represented by counsel, Tha Win.  On July 26, 2013, Judge Dethloff issued an unfavorable

decision.  Tr. 19-36.  On September 10, 2014, the Appeals Council denied Ms. Henderson's

request for review, making the ALJ's decision the final agency decision.  Tr. 1-3.  Plaintiff

timely filed this judicial action.

### III.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

social security benefits when the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it

may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to

more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

*Id.*

The Court may direct an award of benefits where "the record has been fully developed

and further administrative proceedings would serve no useful purpose."   *McCartey   v.*

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 2

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.  EVALUATING DISABILITY

As the claimant, Ms. Henderson bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). [1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.   20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit.  20 C.F.R § 404.1572.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 4

## VI.   ALJ DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Henderson had not engaged in substantial gainful activity since July 20, 2012, the application date.  Tr. 24.

**Step two:** Ms. Henderson had medical impairments that caused more than a minimal effect on her ability to perform basic work activities.   Specifically, she suffered from the following "severe" impairments: depressive disorder, post traumatic stress disorder ("PTSD"), history of alcohol dependence, history of cocaine abuse, and lumbar degenerative disc disease. Tr. 24.

**Step three:** These impairments are not severe enough to meet the requirements of any listed impairment in Appendix 1, Subpart P, Regulations No. 4.  Tr. 26.

**Residual Functional Capacity:** Ms. Henderson had the RFC to perform a full range of unskilled light work.   Specifically, she retained: the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand and/or walk (with normal breaks) for a total of about 6 hours in an eight-hour day, and to sit (with normal breaks) for a total of about 6 hours in an eight-hour day.  Ms. Henderson could occasionally climb, stoop, crouch, and crawl, and could frequently balance or kneel.   Ms. Henderson should avoid concentrated exposure to vibration and hazards.  She could carry out routine one to two-step tasks.  Tr. 27.

**Step four:** Ms. Henderson was capable of performing her past relevant work as an inspector hand packager, defined as light, unskilled work, which would not require the performance of work-related activities precluded by the claimant's RFC.  Tr. 34.  Therefore, she was not disabled.  Tr. 36.

---

[2]  20 C.F.R. §§404.1520, 416.920.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 5

## VII.   ISSUES ON APPEAL

Plaintiff now challenges the ALJ's determination in five ways, arguing that he erred:

1)  when he found that Plaintiff failed to overcome a presumption of nondisability pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988);

2)  when he failed to properly consider the opinions of the examining providers and to provide adequate explanation for not according those opinions greater weight;

3)  when he failed to find that Plaintiff's Carpal Tunnel Syndrome and knee impairment were "severe" impairments

4)  when making his residual functional capacity determination; and

5)  when he reached his decision without the testimony of a Vocational Expert.

Dkt. #12 at 1-2.

## VIII.   DISCUSSION

### A.  Presumption of Nondisability

Plaintiff first argues that the ALJ committed reversible error by finding that Plaintiff had failed to overcome a presumption of nondisability pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).   The Commissioner responds that the ALJ did not err in reaching that conclusion because Plaintiff failed to show through any credible evidence that her condition had worsened or that her circumstances had changed.   Dkt. #13 at 2-3.   The Court disagrees with the Commissioner.

Plaintiff filed a previous application for benefits, which was denied on June 29, 2011. Tr. 22.   Res judicata applies if the Commissioner has "made a previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues, and

this  previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. §§ 404.957(c)(1) & 416.1457(c)(1).  A previous final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability.  *See Chavez*, 844 F.2d at 693; *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996) (as amended); Social Security Acquiescence Ruling ("SSAR") 97-4(9), 1997 SSR LEXIS 4, 1997 WL 742758.  However, this presumption may be overcome by a showing of "changed circumstances."  *Chavez*, 844 F.2d at 693; *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985).  To show "changed circumstances," the evidence must establish that the claimant suffers from an impairment that indicates a greater disability since the prior decision denying benefits.  *Chavez*, 844 F.2d at 693.  In other words, the presumption of nondisability does not apply if the claimant raises an issue not considered in the previous decision, such as the existence of a new impairment, or demonstrates an increase in the severity of an impairment, either one of which adversely affects her residual functional capacity ("RFC").  *See Lester*, 81 F.3d at 827.

In this case, Judge Dethloff noted Plaintiff's previous application for benefits, which was denied, and determined that:

> [t]he objective medical evidence from the time period covered by this second application shows that there were no new allegations, and that the claimant had no worsening in physical or mental functioning from the previous Administrative Law Judge decision.  Because there is no increase in the severity of the claimant's impairments, no allegations of new impairments, and no change in the claimant's age category the claimant's current application for benefits is denied.

Tr. 22.

In her opening brief, Plaintiff relies on Dr. Hamilton's consultative examination to support her argument that she has overcome the presumption of nondisability. Dkt. #12 at 3-4.

Specifically, she states that Dr. Hamilton's findings demonstrate a worsening of her spine condition. *Id.* A review of Plaintiff's prior decision reveals that her spine condition was previously considered. Tr. 64-65. The former ALJ noted that:

> The claimant's lumbar condition does not meet or equal the level of severity required by Section 1.04 of the listings because the record does not document evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of spine, motor loss accompanied by sensory or reflex loss, and positive straight leg raising test; spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication with an inability to ambulate effectively.

Tr. 65. Significantly, Dr. Hamilton notes several differences:

> <u>STRAIGHT LEG RAISING</u>: Positive in the right lower extremity in the seated and supine position both at 30 degrees. The claimant notes sharp pain from her back to her right foot.
> . . .
>
> **Diagnoses:**
> 1. Herniated nucleus pulposus of L4-L5 as well as L5-S1.
> 2. Lumbar radiculopathy and impaired sensation in the right lower extremity.
> 3. Impaired range of motion of the lumbar spine.
> 4. Bilateral carpal tunnel syndrome.
>
> **Functional Assessment/Medical Source Statement:** The claimant is a 48-year-old right-handed African American female with history of back pain. During today's examination, she is found to have impaired range of motion with lumbar spine, positive straight leg test, impaired sensation in her right lower extremity in the L5-S1 distribution. . . .
>
> Maximum standing/walking capacity in an eight-hour workday with normal breaks: Four hours. This limitation is due to herniated nucleus pulposus L4-L5 and L5-S1, impaired range of motion of the lumbar spine.

Tr. 325. This demonstrates an increase in the severity of an impairment, which adversely affects her residual functional capacity. Arguably, this is enough to rebut the presumption of nondisability, and the ALJ erred in not finding as much. However, for the reasons set forth below, the ALJ did not err in his assessment of Plaintiff's treatment and consultative providers,

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 8

and did not err in other aspects of his decision.  Accordingly, the continuation of a presumption of disability was ultimately harmless.

**B.  The ALJ's Assessment of the Medical Evidence**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility."  *Id*. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."  *Reddick*, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id*.  The ALJ also may draw inferences "logically flowing from the evidence."  *Sample*, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion."  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by

substantial evidence in the record." *Id.* at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her.  *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  *See Lester*, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.  "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

In this case, Plaintiff argues that the ALJ failed to give proper weight to, or provide sufficient reasons for rejecting, the opinions and findings of her primary treating provider, Annette Lund, ARNP, and the Agency's consultative examiners, Drs. Salvador and Hamilton, and that he failed to point to evidence in the record to support his assessment of their opinions.

### 1.  Annette Lund, ARNP

Ms. Lund was Plaintiff's treating provider at Harborview Medical Center.  She opined that Plaintiff was incapable of even sedentary work due to her health conditions.  The ALJ gave little weight to this opinion, and noted that Ms. Lund is not an acceptable medical source.  Tr. 31.  The ALJ also noted that although she had treated Plaintiff in the past, there was minimal evidence of recent care.  *Id.*  The ALJ also found Ms. Lund's opinion outweighed by that of a medical source.  Tr. 32.  Here, the Court finds that the ALJ provided specific reasons for giving little weight to Ms. Lund's opinions, supported by the record.  Accordingly, the Court finds no error in his assessment of Ms. Lund's opinion.

### 2.  Patricia Fantoni-Salvador, Ph.D.

Dr. Fantoni-Salvador completed a psychological consultative exam of Plaintiff in October of 2012.  She noted several deficiencies resulting from Plaintiff's depressive and anxiety disorders.  The ALJ gave little weight to this opinion, finding that the severity of Plaintiff's reported symptoms were not consistent with her mental health records, and that Dr. Fantoni-Salvador failed to sufficiently consider the extent of Plaintiff's noted exaggeration of her symptoms.  Tr. 33.  In other words, the ALJ found that Plaintiff lacked credibility.

Questions of credibility are solely within the control of the ALJ.  *See Sample*, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination.  *Allen*, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  *See id*. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  *Tonapetyan*, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id*.

Here the ALJ provided specific, cogent reasons for his disbelief of Plaintiff and therefore the little weight he assigned to Dr. Fantoni-Salvador's opinion.  Accordingly, the Court finds no error in his assessment of Dr. Fantoni-Salvador's opinion.

### 3.  Hayden Hamilton, M.D.

In September of 2012, Dr. Hamilton performed a physical consultative examination of Plaintiff.  As noted above, he found decreased strength in the Plaintiff's bilateral lower extremities and an increase in other lumbar-related symptoms.  The ALJ gave limited weight to Dr. Hamilton's opinions on the basis that the severity of the doctor's findings were inconsistent with his own documented clinical findings.  Tr. 34.

Plaintiff argues that there was sufficient evidence to support Dr. Hamilton's opinion, that the ALJ ignored without an adequate basis.  She points to Dr. Hamilton's "personal

observations of her mobility, range of motion, ability to bear weight, and strength." Dkt. #12 at 9. However, the ALJ looked at Dr. Hamilton's specific observations and ultimately found that they did not support the degree of limitation that he finally assessed. For example, Dr. Hamilton stated that Plaintiff could only lift 10 pounds and had manipulative limitations, but she had 5/5 muscle strength in all extremities, no sign of atrophy, and good wrist range of motion. Tr. 324-25. Dr. Hamilton also noted that Plaintiff had normal range of motion in all of her joints, with the exception of the lumbar region of her spine. Tr. 324. She had an unremarkable gait, and was able to tandem, toe walk, and heel walk without difficulty. *Id.* She had full strength in her arms and legs, with no sign of atrophy. Tr. 325. She had some decreased sensation in her right leg, but normal reflexes. *Id.* These reasons are specific and cogent, and therefore support the ALJ's determination.

### 4. Carpal Tunnel and Knee Impairments

Plaintiff next argues that the ALJ erred by finding that her carpal tunnel and knee impairments were not "severe" impairments. The Court disagrees. As discussed above, the ALJ did not err in assessing and weighing the opinions of Ms. Lund and Dr. Hamilton. The ALJ reviewed Plaintiff's medical records and found no medically acceptable clinical diagnostic techniques showing that she had carpal tunnel syndrome, and also found that the carpal tunnel syndrome was neither medically determinable nor severe. Tr. 25. The ALJ also considered Plaintiff's knee impairment and concluded that the "condition does not cause more than mild functional limitations," and is therefore not severe. Tr. 26. These conclusions were adequately supported by the record.

///

///

### C.  Plaintiff's RFC

Plaintiff next argues that the ALJ erred in his RFC analysis.  However, where evidence has been properly discounted, the ALJ is not required to include it in the residual functional capacity finding.  *Batson*, 359 F.3d at 1197.  Because the ALJ properly discounted the opinions of which Plaintiff complains, as discussed above, Plaintiff has not shown that the ALJ erred in his RFC assessment.

### D.  Testimony of Vocational Expert

Finally, Plaintiff argues that the ALJ erred by failing to consider testimony from a Vocational Expert at Step Five.  As with the RFC assessment, because the ALJ properly discounted the opinions of which Plaintiff complains, Plaintiff has not shown that the ALJ erred at Step Five.

## IX.    CONCLUSION

For the foregoing reasons, the Court hereby finds that the ALJ properly concluded Plaintiff was not disabled.  Accordingly, Defendant's decision to deny benefits is AFFIRMED.

DATED this 6 day of October, 2015.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 14